## Commonwealth v. Morin

*Steven M. Falder,* for appellant.
*Harold H. Cramer,* for Commonwealth.

DOWLING, *J.,* April 8, 1976—On November 29, 1974, Mr. Morin got into "double trouble."[1] His flight across the Dauphin/Lebanon County border resulted in charges in both jurisdictions; failure to stop[2] in Lebanon County and driving under the influence[3] in Dauphin County. For the Dauphin County offense, he was sentenced on January 30, 1975, and for the crime occurring in Lebanon County, on May 22, 1975. The sentence for each of these violations mandate a one-year revocation of operating privileges.[4] Accordingly, he was notified by the Department of Transportation that his operating privileges were revoked for one year effective January 30, 1975, for the adjudgment on driving under the influence.[5] Subsequently, on October 29, 1975, defendant was notified by the

---

1. "Double, double, toil and trouble, Fire burn, and cauldron bubble.": Macbeth, Act IV, Sc. 1.

2. Act of April 29, 1959, P.L. 58, sec. 1027a, as amended, 75 P.S. §1037.

3. Act of April 29, 1959, P.L. 58, sec. 1037, as amended, 75 P.S. §1037.

4. Act of April 29, 1959, P.L. 58, sec. 616, as amended 75 P.S. §616.

5. At the time of sentence, January 30, 1975, defendant voluntarily surrendered his operator's license to the court; hence, the effective date of the secretary's order.

Department of Transportation that, as a result of his sentence for the offense of failure to stop in Lebanon County, he was to receive an additional one-year revocation to commence at the expiration of the prior year, or on January 30, 1976.

It is from this second order of revocation that defendant has filed his appeal; taking the position that the revocation of his license for two years for offenses growing out of the same facts and circumstances is illegal.

To this dual offense with a double penalty, we reach a two-fold conclusion.

First, there is nothing unconstitutional, illegal or unjust in imposing two periods of revocation for two offenses even though they may, in a very all-inclusive sense, be considered as growing out of one set of circumstances. Defendant's contention is apparently that he failed to stop at the accident in Lebanon because of his drunken condition for which he was apprehended in Dauphin County. Somehow, this fails to catch the sensitive and sympathetic ear of justice. Morin committed two distinct crimes and the Commonwealth is certainly entitled to its two pounds of flesh. Such situations occur with great frequency in not only motor vehicle litigation but in the criminal field as well. A felon may fire one bullet which could pass through the body of one victim into another, killing both, and, certainly, no one would argue that he could not be charged with two crimes of murder and, if convicted, receive two consecutive sentences. In fact, in the equitable days prior to Furman v. Georgia,[6] there occurred in the County of

---

6. 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346, reh. den. 409 U.S. 902, 93 S. Ct. 89, 90, 34 L. Ed. 2d 164 (1972).

Dauphin, a situation where a defendant killed two persons and received two sentences of death.[7]

Retreating to the more mundane but nevertheless serious motor vehicle violations, we find in Callahan v. Commonwealth Dept. of Transportation, 19 Pa. Commonwealth Ct. 635, 339 A. 2d 163 (1975), a situation where for a single offense, to wit, driving under the influence, the court held that the secretary, as prescribed by the statute, could suspend a defendant's license for six months for refusal to submit to a chemical breath analysis and, in addition, one year for conviction of driving while under the influence. If for a single incident, suspension and revocation may be added together, a fortiorari, for two separate charges pyramiding periods of revocation is permissible.

However, the statute under which the secretary revokes the operating privileges states:

"(a) Upon receiving a certified record, from the clerk of the court, of proceedings in which a person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, of any of the crimes enumerated in this section, the secretary *shall forthwith* revoke, for a period of one (1) year from the date of revocation, the operating privilege of any such person": Act of April 29, 1959, P.L. 58, as amended, 75 P.S. §616.

"Forthwith" means "at once," "immediately," or "without delay." Is the Commonwealth complying with this requirement when it notifies defendant on October 29, 1975, that a revocation is not to take effect until January 30, 1976? In Hynes v. Logan et al., 53 Dauph. 381, 47 D. & C. 333

---

7. Commonwealth v. Carluccetti, 369 Pa. 190, 85 A. 2d 391 (1952).

(1943), Judge Woodside, later to become an illustrious member of the Superior Court, in a case where defendant had been adjudged guilty of driving under the influence on two occasions occurring within six weeks of each other and for which he received revocation notice on the same date, held that he would only be required to surrender his operating privileges for a period of one year, stating in language quite pertinent to the present issue at 53 Dauph. 383:

"We are asked to determine the period which the second revocation covers.

"Section 614 of the Act of May 1, 1929, P.L. 905, as amended, 75 Purdon's 191, provides:

" '(a) Upon receiving a certified record, from the clerk of the court, of proceedings in which a person pleaded guilty, entered a plea of nolle contendere, or was found guilty by a judge or jury, of any of the crimes enumerated in this section, the secretary shall *forthwith* revoke, *for a period of one (1) year from the date of revocation,* the operating *privilege* of any such person'. (Underscoring ours).

"Forthwith means 'immediately' or 'without delay.'

"Under the aforesaid section, the Legislature has put the duty upon the Secretary of Revenue to deny an operator the privilege of driving immediately upon receiving a certified record from the Clerk of the Courts.

"The Commonwealth contends that because of a previous revocation of the license there was nothing to revoke, and thereupon it became the duty of the Secretary to wait until he had something to revoke. If this rule were to be followed, a person who may not have an operator's license because of his failure to renew it, or for any other reason,

would not have his privilege to operate withdrawn until he made application for a license. Thus the Secretary of Revenue would have to wait an indefinite period, possibly years, until the guilty party would do the vain thing of making application for a license which he knew would not be granted.

"It is the operating 'privilege' which the law takes away from the violator. This privilege can be denied him whether at the time it is taken away, he has a license or not. The penalty is not the revocation of the license, but is the denial of the privilege to operate. The Act says that the period for which he shall not have such privilege is one year from the date of revocation. The revocation apparently does not take effect until the Secretary of Revenue acts. It is his duty to act immediately upon receipt of official word from the Clerk of the Court."

Situations could easily arise where there was a sufficient interval between the two adjudications of guilty so that the second revocation might not commence until the first period had expired. In the instant case, if the proceedings in Lebanon had not culminated in a sentence until after January 30, 1976, it would have been entirely proper for another year's revocation to be imposed. However, the certification from the Clerk of the Court of Lebanon County was received by the Department of Transportation on June 4, 1975, and we hold that the revocation in connection therewith had to commence forthwith. Certainly, it could not be deliberately delayed until a prior revocation had been served.

In accordance with the views herein expressed, we sustain the appeal and remit the matter to the Secretary of the Department of Transportation for action consistent herewith.